I concur with the majority's analysis of appellant's second, third, fourth, and fifth assignments of error. However, for the following reasons, I must respectfully dissent from the opinion of the majority as it relates to appellant's first assignment of error.
Ordinarily it is unnecessary to restate the facts of a case in a dissenting opinion. Nevertheless, I feel that appellant's first assignment of error is so fact dependent that a brief recitation of the relevant and uncontroverted facts is appropriate. The record indicated that after appellant and his female companion finished playing pool at a local bar, the couple left and began driving to a nearby fast food restaurant to purchase something to eat. On the way there, appellant drove by a home in which a party he had been invited was taking place. Noticing that there were still several cars in front of the house, appellant decided to stop for a minute to say hello.
Unfortunately, almost as soon as appellant entered the home, he and another partygoer began to argue. The argument was continued on the front porch where appellant and the other person amicably settled their differences. However, shortly thereafter, appellant was confronted by the deceased, Christopher Warwin, and the two men exchanged taunting words, but parted without violence.
Believing his female companion was still inside, appellant reentered the home in order to find her and leave the party. Sometime during the confusion in the house, appellant and his female companion again became separated. Appellant, however, proceeded to his female companion's car, and admittedly retrieved a knife from inside. Testimony showed that appellant then started to pace back and forth while waiting near the rear of the vehicle.
While appellant was standing by the car, Warwin left the front porch and began running toward him. The other alleged victim, Christopher DeAngelis, not even knowing why Warwin left the porch, decided to follow. When the alleged victims arrived in the parking area, DeAngelis admitted that, although appellant made no threatening gestures toward either himself or the other victim, he charged appellant. It was during the ensuing melee that Warwin lost his life and DeAngelis was wounded.
At trial, appellant took the stand in his own defense and admitted that he had stabbed DeAngelis and Warwin. However, he argued that his actions were made in self-defense. The jury obviously rejected appellant's claim when it found him guilty of involuntary manslaughter and felonious assault.
Before, continuing I want to note my agreement with the majority's conclusion that appellant was not at fault in creating the immediate situation leading up to the tragic confrontation. Moreover, I also agree that the record shows that appellant possessed an honest and reasonable belief that he was in imminent danger of death or great bodily harm, and that appellant was justified in using deadly force under the circumstances. Despite this, however, I part company with the majority with respect to its conclusion that appellant somehow violated his duty to retreat.
As aptly noted by the majority, the Supreme Court of Ohio has set forth three elements that a criminal defendant must meet to establish self-defense: (1) the defendant was not at fault in creating the situation giving rise to affray; (2), the defendant had an honest and reasonable belief that he was in imminent danger of death or great bodily harm; (3) the defendant did not violate any duty to retreat. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. Because this is an affirmative defense, the proponent bears the burden of proving self-defense by a preponderance of the evidence. State v. Palmer (1997), 80 Ohio St.3d 543,563.
In concluding that appellant violated his duty to retreat, the majority states that appellant had many opportunities to retreat and avoid danger. The majority goes on to suggest that there was nothing to stop appellant from waiting for his female companion in the car or from leaving altogether. They concluded that when appellant retrieved a knife, he demonstrated on intent to stand his ground instead of leaving the scene; hence, he violated a duty to retreat.
Appellant, however, did retreat. The record shows that he deliberately returned to the car in the parking area, well away from the original confrontation with the alleged victims, and that it was DeAngelis and Warwin who pursued him without provocation. Appellant was then attacked by the two substantially larger individuals and knocked to the ground. It was not until that time appellant opened his knife. Thus, the jury had to determine whether, in those few seconds, appellant had the opportunity to remove himself from the fatal confrontation.
Credibility was not the issue here because, with only a few minor inconsistencies, there is no real dispute as to the evidence concerning appellant's claim of self-defense. Any provocation generated by appellant in the house or on the front porch ended when he retreated to the parking area. Moreover, his possession of a knife had no relevance until he was attacked by DeAngelis and Warwin. Therefore, the only relevant provocation and confrontation was caused by the unprovoked and violent attack by the two alleged victims. It was DeAngelis and Warwin who removed appellant's ability to retreat.
Again, appellant left the front porch to avoid Warwin and was subsequently pursued by the alleged victims. As a result, he never had an opportunity to extricate himself a second time. Thus, he did not violate his duty to retreat.
The majority opined that appellant could have left the party without his female companion and presumably walked home. I respectfully disagree. His retreat to the parking area would have been absolutely sufficient if he had not been pursued and attacked by the alleged victims. At that point, appellant had a reasonable and immediate fear of great bodily harm or even death.[1]
Pursuant to the foregoing analysis, I conclude that appellant proved self-defense by a preponderance of the uncontroverted evidence. Therefore, I would find his first assignment of error to have merit.
 __________________________ JUDITH A. CHRISTLEY, JUDGE
[1] Although race was not an issue emphasized at trial, it can not be discounted as a factor in the events of that night because appellant an African-American male was accompanied by a white female companion at an otherwise all white party.